Charles J. Gunther et al. *v.* Board of Zoning Appeals of the City of New Haven et al.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued November 10—decided December 14, 1949.

*William L. Beers,* with whom, on the brief, were *George G. DiCenzo* and *Alfred F. Celentano,* for the appellant (defendant board).

*John A. Maresca,* with whom was *Julius Maretz,* for the appellant (defendant DeSenti).

*George J. Grady,* with whom was *William Dimenstein,* for the appellees (plaintiffs).

BROWN, J. The defendant board of zoning appeals of the city of New Haven granted permission to the defendant DeSenti to use an existing dwelling house located at 132 Lawrence Street in New Haven as an office in connection with a manufacturing establishment, the Mettler Machine Tool Company, conducted in a building toward the rear of the premises as a nonconforming use. The plaintiffs, neighboring property owners, appealed to the Court of Common Pleas, which sustained the appeal, and the defendants have appealed to this court.

We summarize these material facts found by the court which are undisputed: The property at 132 Lawrence Street is owned by the company and consists of a lot which fronts 60 feet on the southerly side of that street and is 150 feet deep. A one-family dwelling house which was used as a residence until October, 1948, stands on the northeasterly portion of the lot near the front, and a brick building used by the company for manufacturing is nearer the rear. Under the city's zoning ordinance, effective since September 1, 1929, this property is in a residence B zone. Prior to that date the brick building was, and it ever since has been, used by the company for manufacturing purposes which constitute a nonconforming use. On September

20, 1948, DeSenti, on behalf of the company, applied to the city's board of zoning appeals for an "Extension of a non-conforming use; namely to use existing dwelling in front of premises as an office." At the hearing before the board, DeSenti by his attorney stated that it was intended to remodel the interior of the house to afford office space for an increase in the company's office force for which its present office was inadequate. The plaintiffs objected to the requested extension of the nonconforming use. On October 6, 1948, the board granted the application. This entry appears in the minutes of its executive session, which determined the matter: ". . . that by virtue of sub-divisions 2 and 3 of Section 1033 of our Zoning Ordinance, the Board may permit such non-conforming uses by any industrial establishment as may be necessary to adapt its plant or any part thereof to different or improved processes of manufacturing, or production, and may permit the extension of an existing or proposed building into a more restricted district. Hence, in view of the above, a motion to grant this appeal was . . . passed." The use granted was a prohibited use in a residence B zone.

These further facts, challenged by the defendants as constituting conclusions unsupported by the subordinate facts, are properly established by the finding: There was no evidence before the board of any "practical difficulties or unnecessary hardships" in using the property as a dwelling house, and it made no such finding. There was no evidence to support any finding that the company needed additional space because it was "necessary to adapt its plant or any part thereof to different or improved processes of manufacture or production." There was no extension of an "existing or proposed building" involved.

Section 1033 of the city's zoning ordinance empowers

the board, subject to appropriate conditions, to "determine and vary the application of the regulations herein established in harmony with their general purpose and intent" in seven specified situations. The first three are these: "1. Permit the extension of an existing commercial or industrial establishment in any district. 2. Permit such non-conforming uses by any industrial establishment as may be necessary to adapt its plant or any part thereof to different or improved processes of manufacture or production. 3. Permit the extension of an existing or proposed building into a more restricted district." New Haven Zoning Ordinance (Oct. 1941). As appears from the passage we have quoted from the minutes of the board's executive meeting, it was in reliance upon § 1033 (2) and (3) that the board granted the application. As further appears from the last two sentences of the preceding paragraph, the record affords no basis for relief under either of these provisions.

The issue for the trial court upon the appeal was whether the board had acted arbitrarily or illegally, or so unreasonably as to have abused its discretion. *Blake* v. *Board of Appeals,* 117 Conn. 527, 532, 169 A. 195; *Piccolo* v. *West Haven,* 120 Conn. 449, 453, 181 A. 615. The legislative enactment, pursuant to which this zoning ordinance was adopted, made broad provision for the powers to be exercised by the trial court in reviewing the board's decisions, in these terms: "If it shall appear to the court on the trial of such case that there has been an abuse of reasonable discretion on the part of said board, or that its decision was based upon a mistake or misconstruction of the law, or that such decision was the result of mistake or fraud, then such order, requirement or decision shall be set aside and vacated; otherwise it shall remain in full force and effect." 19 Spec. Laws 1009, § 6. Accordingly, not-

withstanding the board's decision could not be supported upon either of subdivisions 2 and 3 of § 1033, the sole grounds upon which it was predicated, it was incumbent upon the court to determine whether it could be sustained under subdivision 1, the only one which was claimed to be applicable. This calls for an interpretation of the effect to be accorded to that provision. Was it operative to permit the board to extend the company's nonconforming industrial establishment or was it inapplicable, rendering the board's decision the result of a mistake as to the law and demonstrating that the board had acted illegally? This is the decisive question presented by the defendants' attack upon the court's primary conclusion that the board in granting the application did act illegally.

A consideration of the other provisions of the ordinance is essential in determining whether subdivision 1 of § 1033 applies to any given use, be it conforming or nonconforming. Its language, "Permit the extension of an existing commercial or industrial establishment in any district," by its terms is rendered applicable to establishments which under the ordinance are permissible in residence A districts by subdivisions 4 and 6 of § 1011, and to those allowable in the other three residence districts, as well as to those in the two business and three industrial districts specified, as appears by §§ 1012-1019. Relative to each of these districts there are specific restrictions prescribing to a greater or less extent the permissible building area, requisite yard space, height of structures and proximity to the street, as specified in §§ 1020-1027. Under "General Provisions" of the ordinance, § 1029 provides that "No lot area shall be so reduced that the dimensions of any of the yards or open spaces shall be smaller than herein prescribed." Section 1032 charges the building inspector with the duty of enforcing the ordinance and

of requiring that "the application for a building permit and the accompanying plot plan shall contain all the information necessary to enable him to ascertain whether the proposed building complies with the provisions of this Ordinance." It further states that no building permit shall be issued until he has certified "that the proposed building or alteration complies with all the provisions of this Ordinance" and that no person shall build or alter until such permit therefor has been duly issued. These provisions indicate that there was good reason for the enactment of the provision made by subdivision 1 of § 1033 for the extension of conforming commercial and industrial establishments in the several districts.

It does not necessarily follow, however, that subdivision 1 of § 1033 likewise applies where a nonconforming use is involved. The fact that this subdivision, with its broad provisions for the extension of conforming uses, is immediately followed by subdivision 2, which in effect prescribes that nonconforming industrial uses may be extended only in so far as necessary to adapt an existing plant to improved processes of production, makes clear that subdivision 1 does not apply to the latter. To conclude otherwise, if the ordinance is to be interpreted in harmony with its "general purpose and intent," would be to hold subdivision 2 superfluous and of no effect. Section 1030, under "General Provisions" of the ordinance, after setting forth the specifically defined limitations within which nonconforming uses are to be allowed, continues: ". . . and such use may hereafter be extended or moved to any part of a plant which was arranged or designed for such use at such effective date," that is, the date when the ordinance became operative. When the introductory sentence of § 1033, authorizing the board to "vary the application of the regulations . . . in harmony with

their general purpose and intent," is construed in connection with these words in § 1030, further reason appears for holding that it is subdivision 2 of § 1033 and not subdivision 1 which applies to nonconforming uses. This result, which is effective to limit the extension of nonconforming uses more strictly than the corresponding extension of permissible uses, is in accord with the principles applied by this court in considering provisions as to nonconforming uses in various zoning ordinances. We have held: Conditions should be reduced to conformity as speedily as is compatible with justice. *Thayer* v. *Board of Appeals,* 114 Conn. 15, 23, 157 A. 273. The power of authorizing variations is to be sparingly exercised. *Grady* v. *Katz,* 124 Conn. 525, 529, 1 A. 2d 137. In determining whether a variance is permissible, the requirement that any change shall be in harmony with the general intent and purpose of the ordinance is highly important. *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 541, 45 A. 2d 828; *Kamerman* v. *LeRoy,* 133 Conn. 232, 235, 50 A. 2d 175.

Subdivision 7 of § 1033 of the ordinance provides: "Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any provision" the board is empowered "in a specific case to vary" the provision in harmony with its general purpose and intent so that the general welfare may be secured and substantial justice done. This subdivision has no application to either of subdivisions 1 and 2. *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 620, 53 A. 2d 659. There were no facts which warranted its application in this case. Subdivision 2 adequately provides, where it is justified, for the varying of the restricted right of one entitled to a nonconforming use. To construe the ordinance as empowering the zoning board, without a justifiable finding of hardship, to extend nonconforming uses in residential districts would

be not only out of harmony with the general purpose of the ordinance but disruptive of its reasonable operation. Subdivision 1 of § 1033 was not applicable as a basis for granting the defendant DeSenti's application, and the court's conclusion that the defendant board acted illegally in granting it was correct.

There is no error.

In this opinion ELLS and DICKENSON, Js., concurred.

MALTBIE, C. J. (dissenting). Subdivision 1 of § 1033 of the ordinance provides that the board of zoning appeals may permit the extension of a commercial or industrial establishment "in any district." There is no ambiguity in these words. They express clearly and precisely the intent of those who adopted the ordinance. To construe the provision as applying only to zones where the ordinance permits such uses and not to nonconforming uses can be justified only if, considering the ordinance as a whole, sound reason for doing so definitely appears in its other provisions, or the result of giving the words quoted their ordinary meaning would be attended by consequences so absurd or unreasonable that it must be assumed the legislative body could not have intended them. *State* v. *Nelson*, 126 Conn. 412, 417, 11 A. 2d 856.

The majority opinion finds only one ground in other provisions of the ordinance for restricting the language of subdivision 1 to conforming uses. To include nonconforming uses, it says, would be to make the provisions of subdivision 2 superfluous and of no effect. The fallacy of that reasoning is easily demonstrated. Subdivision 1, as applied to such uses, would authorize the board to permit the extension of an existing use but not the addition of a new nonconforming use; but subdivision 2 would authorize the board to

permit such a new use under the limitation that it is necessary to adapt the plant to different or improved processes of manufacture or production. The two sections serve different purposes and are parts of a single scheme. Instead of subdivision 2 being superfluous if subdivision 1 is applied to a nonconforming use, it is clearly supplementary to it.

For the rest, the majority opinion, in support of its conclusion, points only to certain general considerations with respect to proper zoning. But they afford no ground to limit a clear and unambiguous provision of a properly adopted zoning ordinance. It is not for us to substitute for a clearly expressed legislative intent our ideas of what would be a wiser provision; *Connelly* v. *Bridgeport,* 104 Conn. 238, 249, 132 A. 690; nor is it the function of the court to attempt to improve a legislative enactment by reading into it provisions which do not find expression in its words. *Lenox Realty Co.* v. *Hackett,* 122 Conn. 143, 150, 187 A. 895.

On the other hand, if subdivision 1 does not apply to nonconforming uses, it would serve little, if any, purpose. When a commercial or industrial use is permitted in any zone, an extension of it is equally permissible and there is no need for any permission from the board. The majority opinion seeks to find some function which subdivision 1 might serve when applied to conforming uses, and it holds that it might permit a deviation from the provisions of the ordinance as to open spaces about a building. If that were its only purpose, it is indeed strange that such broad language should have been used. Moreover, the particular provision of the ordinance (§ 1029) to which the majority opinion refers is one which provides: "No lot area shall be so reduced that the dimensions of any of the yards or open spaces shall be smaller than herein prescribed"; that provision is directed to the reduction of "lot

areas" and has no reference to preservation of the pre-
scribed open spaces in a lot the dimensions of which
remain unchanged.

The provisions of subdivisions 1 and 2 clearly indi-
cate a purpose not to hamper the growth of commercial
and industrial uses in the city if the board deems it
wise, subject to definite limitations as regards addi-
tional nonconforming uses, to permit the extensions of
such uses. It certainly cannot be said that to con-
strue the ordinance to accomplish such a purpose is to
bring about absurd or unreasonable consequences. On
the other hand, so forced a reading of the ordinance as
that expressed in the majority opinion clearly invades
the province of the authorities of the city who are in-
trusted with the duty of determining what method of
zoning will best serve its welfare.

In this opinion JENNINGS, J., concurred.