JOSEPH P. SIMONETTE *v.* GREAT AMERICAN INSURANCE COMPANY

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 4—decided December 4, 1973

*Charles H. Fischer, Jr.,* with whom, on the brief, was *Herbert D. Fischer,* for the plaintiff.

*F. Timothy McNamara,* for the defendant.

MacDonald, J.  The basic question presented by this reservation from the Superior Court is whether the existence of an automobile liability insurance policy with limits sufficient to satisfy the minimum Connecticut statutory requirements but insufficient to satisfy an admittedly valid tort claim against the operator of the insured Connecticut motor vehicle permits the classification of that vehicle as an "uninsured motor vehicle" within the meaning of the uninsured motorist provision in the claimant's own automobile liability insurance policy.

The plaintiff's action seeking an order directing the defendant insurance company to proceed with arbitration was reserved for the advice of this court on a stipulation of the following facts:  On June 25, 1970, Joseph P. Simonette, Jr., hereinafter called Simonette, Jr., eighteen years of age, was a passenger in an automobile operated by William K.

Good. James Carroll, not a party to this action, also was a passenger in the Good automobile. While traveling on a public highway in the town of Milford the automobile left the road and collided with a telephone pole, resulting in the death of both Simonette, Jr., and Carroll. The negligence of Good was the sole proximate cause of the death of Simonette, Jr. The Good automobile was insured under a liability insurance policy issued by Safeco Insurance Company, hereinafter Safeco, in the amount of $20,000 for each person and $20,000 for each accident, and Safeco paid $10,000 to the estate of Simonette, Jr., and $10,000 to the estate of Carroll under the policy. Damages for the wrongful death of Simonette, Jr., exceed the sum of $10,000. On the date of the accident the plaintiff, Joseph P. Simonette, the father of Simonette, Jr., had an automobile insurance policy with the Great American Insurance Company, hereinafter Great American, under which Simonette, Jr., was an "insured" and which provided for uninsured motorist coverage in the amount of $20,000 for each person and $20,000 for each occurrence. The estate of Simonette, Jr., made a claim against Great American for payment of the $20,000 uninsured motorist coverage less the sum of $10,000 paid by Safeco on behalf of Good and demanded arbitration of the estate's claim by the American Arbitration Association. Great American has refused to arbitrate. The plaintiff has performed all the conditions of the policy relating to claims made under the uninsured motorist clause.

The questions reserved for the advice of this court are: (1) Should an order issue directing the parties to this action to proceed to arbitrate the claim of the estate of Simonette, Jr., against Great

American under the uninsured motorist clause, giving credit to the defendant in said proceedings for the $10,000 already received from Safeco? (2) Is the estate of Simonette, Jr., foreclosed from making any claim under the uninsured motorist clause of the Great American policy to an excess in damages sustained by it over $10,000 but not more than $20,000 by reason of the wrongful death of its decedent? (3) Is the plaintiff entitled to an order directing the defendant to proceed with arbitration? The determination of the second of these questions is decisive of the issues presented upon this reservation.

Section 38-175c of the General Statutes requires that every automobile policy issued in this state must contain a provision for "uninsured motorists coverage," with limits for bodily injury or death not less than those specified in § 14-112 (a). The minimum coverage required by § 14-112 (a) is $20,000. Section 38-175a, in relevant part, authorizes the insurance commissioner to adopt rules and regulations "with respect to minimum provisions to be included in automobile liability insurance policies . . . and uninsured motorist coverages." Pursuant to this authorization, the commissioner promulgated regulations which, referring to the limits of liability of uninsured motorist coverages, state in part that "[t]he limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the 1969 supplement to the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury." Regs., Conn. State Agencies § 38-175a-6 (d).

It is the plaintiff's contention that these statutes and regulations, properly interpreted, entitled an injured party who has an uninsured motorist policy and receives a sum less than the amount specified under that policy from an insured tort-feasor to the difference between what he received from the tort-feasor and the amount of his own uninsured motorist policy provision. With this contention we cannot agree. The substance of the plaintiff's claim is that the word "uninsured" as used in all of the applicable statutes and regulations, as well as in the plaintiff's insurance policy, must be construed to mean "underinsured" in relation to the plaintiff's injury. We find no ambiguity, however, in the statutes or regulations which would allow us to interpret into them such a significant addition to the coverage required.

Section 1-1 of the General Statutes provides that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language." *State* v. *Benson,* 153 Conn. 209, 214, 214 A.2d 903; *Baker* v. *Norwalk,* 152 Conn. 312, 315, 206 A.2d 428. The terms "automobile liability insurance," "insured," and "uninsured" are words of common meaning and understanding. "Automobile liability insurance" is defined in Webster's Third New International Dictionary as "insurance against loss from or legal liability for damages arising out of ownership, maintenance, or operation of a motor vehicle." "Underinsurance" means "insurance in an amount insufficient to cover the possible loss or to satisfy the requirements of a coinsurance clause." "Insured" means "the owner of a policy of insurance." "Un" is simply a prefix meaning "not."

That the tort-feasor Good was in fact insured to the extent required by Connecticut's financial responsibility law is not disputed. Thus he clearly was not "uninsured" in any ordinary sense of the term. The plaintiff argues, however, that to hold that Good was not an uninsured motorist would create the anomalous situation wherein the injured party would be better off if the tort-feasor had no insurance at all. He further points out that "uninsured motorist" does not necessarily mean a motorist who has no insurance whatever at the time of the accident, citing as examples the situations where the tort-feasor's carrier becomes insolvent after the claim has arisen or where for some reason the insurer disclaims liability.

The plaintiff, unfortunately, is quite correct in labeling the situation in which he finds himself an anomaly. However, "[w]hile ... [§ 38-175c] should receive an equitable construction, courts cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result." *State* v. *Malm*, 143 Conn. 462, 467, 123 A.2d 276. Much less does the plaintiff's unfortunate circumstance justify this court's disregarding the legislative mandate that words used in statutes "shall be construed according to the commonly approved usage of the language." General Statutes § 1-1. A due regard for the differing functions of the legislative and judicial branches of government requires that the courts refrain from rewriting, under the pretext of interpretation, the clearly expressed language of a legislative enactment which the court deems to be preferable to that which the legislation requires. "In the field of legislation, the legislature is supreme. Courts must apply legislative enactments according to their plain

terms." *State* v. *Malm,* supra. "Uninsured" clearly is not the same as "underinsured" and "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Marcolini* v. *Allstate Ins. Co.,* 160 Conn. 280, 284, 278 A.2d 796. To adopt the plaintiff's suggested definition of "uninsured" would effect a drastic change in the law of insurance as it now stands in this state. Although the case before us involves an uninsured motorist policy with a $20,000 limit, § 38-175c provides that each insurer licensed in the state "shall" provide uninsured motorist coverage to the extent requested by the insured, up to the amount of the bodily injury coverage in the same policy, which might be $300,000 or more. If the plaintiff's position were to be accepted, a tort-feasor with $200,000 of liability coverage nonetheless would be considered "uninsured" with respect to an injured party seeking to recover additional damages suffered from the carrier of his uninsured motorist policy.

We note further that the legislature already has addressed itself to some phases of the problem. Section 38-175c specifically includes insured motor vehicles "the insurer of which becomes insolvent prior to payment of . . . damages" within the scope of "uninsured motorists coverage." In doing so it established one specific exception to the ordinary meaning of the word "uninsured," no doubt in order to preclude one possible situation where the injured party would be better off had he been injured by one who was in fact "uninsured." We might point out that the plaintiff's uninsured motorist policy also specifically includes insured automobiles whose in-

surer disclaims coverage within its provisions. While a strong policy argument can be advanced in support of the plaintiff's desired expansion of the definition of "uninsured" to prevent the particular anomaly presented herein, it is not the function of this court to attempt to improve legislation by reading provisions into it. *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 311, 71 A.2d 91. Furthermore, the adoption of such a specific expansion of the scope of a statute relating to an extensively regulated industry is one particularly appropriate for further legislative consideration and action rather than implementation by judicial fiat.

The defendant has cited numerous decisions from other jurisdictions purportedly on point with the case at bar. Many of the cases cited actually involve the situation where the tort-feasor had liability insurance below that required by the applicable financial responsibility law, a situation quite different from the one before us and one which we are not called upon to decide. Other jurisdictions have split on the precise issue presented here. See, e.g., *Porter* v. *Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258 and *Detrick* v. *Aetna Casualty & Surety Co.,* 261 Iowa 1246, 158 N.W.2d 99. They thus provide little support for the plaintiff's position, particularly in light of the other considerations we have discussed.

Having answered the second question in the reservation "Yes," we answer the first and third questions presented "No."

No costs shall be taxed in this court for or against any party.

In this opinion HOUSE, C. J., SHAPIRO and LOISELLE, Js., concurred.

BOGDANSKI, J. (dissenting). I respectfully dissent.

The uninsured motorist statute is an attempt to resolve the pressing problem of the financially irresponsible motorist. It is remedial legislation and should be liberally construed. *Everett* v. *Ingraham,* 150 Conn. 153, 157, 186 A.2d 798; *Dempsey* v. *Tynan,* 143 Conn. 202, 208, 120 A.2d 700. The purpose and scope of the minimum uninsured motorist protection required by § 38-175c of the General Statutes and § 38-175a-6 of the regulations promulgated by the insurance commissioner is the dispositive issue in this appeal. Any provisions of any contract of insurance which conflict with the statute and regulations must give way to their requirements. General Statutes § 38-175d; *Fidelity & Casualty Co.* v. *Darrow,* 161 Conn. 169, 172, 286 A.2d 288.

It is true that neither the statute nor the regulations define the word "uninsured." But the absence of a definition ought not to impede the achievement of their remedial aims by fostering the creation of exceptions. For this reason this case should not be decided solely on the basis of the literal meaning of a word. As Justice Reed of the United States Supreme Court has said: "When that meaning has led to absurd or futile results, . . . this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." *United States* v. *American Trucking Associations, Inc.,* 310 U.S. 534, 543, 60 S. Ct. 1059, 84 L. Ed. 1345.

Reliance on the literal meaning of the word "uninsured" forces an anomalous result in the present case, one which is at variance with the legislative intent. The aim of this legislation is to provide financial protection to all licensed motorists in this state in the minimum amount of $20,000. Had Joseph Simonette, Jr., been killed in an automobile accident caused by an uninsured tort-feasor, Great American would have been liable for damages up to $20,000 under its policy with his father. But because the tort-feasor did carry insurance, though it was divided between two victims, my colleagues hold that Great American has no liability, regardless of how little is actually paid to the Simonette estate by the tort-feasor's insurance carrier, and regardless of the amount of actual damages. In a multiple victim accident caused by a minimally insured tort-feasor, individual recoveries from the tort-feasor's carrier can be minuscule compared with the damages incurred. The insured victim in the present case and in similar cases would be better off if the tort-feasor carried no insurance at all.

This anomalous result should be avoided by holding that an automobile or motorist is "uninsured" within the meaning of our statute and regulations to the extent that the liability exceeds the amount of insurance actually available to the victim who has paid for uninsured motorist coverage. This construction is logical and reasonable, for when a tort-feasor's liability is greater than his insurance coverage, he is clearly uninsured for the difference. Nor is there any problem of double coverage, since the regulations allow reduction of the uninsured motorist coverage "to the extent that damages have been

. . . paid by or on behalf of any person responsible for the injury." Regs., Conn. State Agencies § 38-175a-6 (d).

. The provision of the regulations that the term "uninsured automobile" includes a vehicle insured by an insolvent company also supports the construction of "uninsured" that is urged. For even if an insurer becomes insolvent, its receiver might still allow a portion of the claim of the accident victim with uninsured motorist coverage. In such a case our statute and regulations would not prevent that victim from obtaining the deficiency from his own company. See *Stephens* v. *Allied Mutual Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133. There is no reason to distinguish the partial satisfaction of a claim by an insolvent company from the partial satisfaction of a claim by a solvent one.

My position is supported by the decisions of the courts of a number of other jurisdictions. Precisely on point is *Porter* v. *Empire Fire & Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258. Porter, who carried uninsured motorist coverage, was one of five persons injured in an automobile accident caused by a tort-feasor who carried the minimum liability coverage required by law. Porter's share of that insurance came to $2500. The Arizona Supreme Court held that under the state Uninsured Motorist Law, Porter was entitled to recover an additional $7500 of his admitted damage under his own uninsured motorist coverage. The court said (p. 279): "The uninsured policy is issued for the protection of the insured in the minimum amount provided in the Financial Responsibility Act. Otherwise, . . . the insured might be better off if the offending motorist had no insurance whatsoever.

We agree with the principle that the person who avails himself of the protection afforded by uninsured motorist coverage should be permitted to recover as if the tort-feasor had the minimum amount of liability insurance; *provided* that there be *available to him* the full amount of his damages, up to the minimum amount prescribed by the Financial Responsibility Act, which in this case is $10,000. This is so whether this sum is recoverable under the insured's policy alone or in combination with those funds actually receivable from the tort-feasor's liability coverage."

The courts of several other states[1] have held that under uninsured motorist statutes similar to that of Connecticut a vehicle is "uninsured" when the liability policy in effect for that vehicle does not meet the minimum coverage required in the jurisdiction. Although these courts grounded their decisions on the legal inadequacy of the liability insurance carried by the tort-feasor, the fact remains that to fulfill the legislative intent behind uninsured motorist coverage they construed "uninsured" broadly so as to assure minimum coverage to the insured.

I would, therefore, answer the questions upon which advice is desired as follows: (1) "Yes," (2) "No," (3) "Yes."

---

[1] *Taylor* v. *Preferred Risk Mutual Ins. Co.*, 225 Cal. App. 2d 80, 37 Cal. Rptr. 63; *Kirkley* v. *State Farm Mutual Ins. Co.*, 17 Cal. App. 3d 1078, 95 Cal. Rptr. 427; *Carrignan* v. *Allstate Ins. Co.*, 108 N.H. 131, 229 A.2d 179; *Matter of Neals* v. *Allstate Ins. Co.*, 34 App. Div. 2d 265, 311 N.Y.S.2d 315; *Matter of Buglione* v. *Motor Vehicle Accident Indemnification Co.*, 32 App. Div. 2d 525, 299 N.Y.S.2d 661; *Allstate Ins. Co.* v. *Fusco*, 101 R.I. 350, 223 A.2d 447; see also *White* v. *Nationwide Mutual Ins. Co.*, 361 F.2d 785 (4th Cir.), and *Stevens* v. *American Service Mutual Ins. Co.*, 234 A.2d 305 (D.C. App.), construing Virginia law.