JAMES W. LASH, ADMINISTRATOR (ESTATE OF
MICHAEL LASH) *v.* AETNA CASUALTY
AND SURETY COMPANY ET AL.
(15223)

Borden, Berdon, Katz, Palmer and Landau, Js.

Argued November 2, 1995—decision released March 19, 1996

David T. Grudberg, with whom, on the brief, was *Howard A. Jacobs*, for the appellant (plaintiff).

*Philip F. von Kuhn* and *Raymond T. DeMeo*, with whom were *Ruth Beardsley* and *Frank J. Forgione*, for the appellees (defendants).

PALMER, J. The principal issue raised by this certified appeal is whether the construction of General Statutes § 38a-336 (e)[1] that we adopted in *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625, 569 A.2d 1105 (1990), and *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 594 A.2d 977 (1991),[2] was erroneous and should be abandoned. Because we conclude that neither *Gould* nor *Coon* was wrongly decided we decline to overrule them.

---

[1] General Statutes § 38a-336 (e) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

At all times relevant to this appeal, the above subsection was codified as § 38a-336 (d). In 1993, § 38a-336 was amended by No. 93-297 of the 1993 Public Acts, which added a new subsection (d), causing the previous subsection (d) to be renumbered as subsection (e). Because § 38a-336 as amended is also relevant to the outcome of this appeal, and because the content of the new subsection (e) and the old subsection (d) are identical, all references in this opinion are to the current statutory provisions.

[2] *Gould* was overruled in part on other grounds by *Coon*.

The following facts are undisputed. The plaintiff, James Lash, is the administrator of the estate of Michael Lash, who was killed on October 21, 1988, while he was a passenger in a vehicle that was struck head-on by a vehicle driven by Mark Rondo. Rondo and the operator of the vehicle occupied by Lash, the plaintiff's decedent, were also killed, and several passengers in each of the two vehicles sustained injuries. Rondo's vehicle was covered by a $500,000 liability policy under which the plaintiff received payments totaling $118,373.50. The remainder of Rondo's liability coverage was exhausted by other injured claimants.

The plaintiff's decedent was insured under certain underinsured motorist policies issued by the defendant insurance carriers. The defendants and the amount of underinsured motorist coverage provided by each include: Aetna Casualty and Surety Company, $500,000; Allstate Insurance Company, $200,000; Hartford Casualty Insurance Company, $100,000; Liberty Mutual Insurance Company, $25,000; and General Accident Insurance Company, $20,000.[3] The plaintiff, in his capacity as administrator, sought recovery under each of these policies, and the claim was submitted to arbitration.[4] The arbitration panel, following our decisions in *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 30, and *American Motorists Ins. Co.* v. *Gould,* supra, 213 Conn. 625, concluded that the plaintiff was not entitled to underinsured motorist benefits under any one of the policies issued by the defendants because none of them contained underinsured motorist limits greater than the

---

[3] The plaintiff's decedent was also insured under a policy issued by the Nationwide Insurance Company with underinsured motorist limits of $20,000. Nationwide Insurance Company paid the plaintiff a total of $15,730.79, representing the coverage limit less certain applicable credits, and is not a party to this appeal.

[4] General Accident Insurance Company did not participate in the arbitration but agreed to be bound by the decision of the arbitration panel.

liability limits of Rondo's policy.[5] The trial court, *DeMayo, J.*, denied the plaintiff's application to vacate the arbitration award and rendered judgment for the defendants. The Appellate Court, in a per curiam decision, affirmed the judgment of the trial court;[6] *Lash* v. *Aetna Casualty & Surety Co.*, 36 Conn. App. 623, 652 A.2d 526 (1995); and this certified appeal followed.[7] We now affirm the judgment of the Appellate Court.

## I

The plaintiff maintains that he is eligible to recover underinsured motorist benefits up to $845,000 under

[5] The arbitration panel initially concluded that underinsured motorist coverage was triggered under each of the policies issued by the defendants. Upon reconsideration of its decision after the release of our decision in *Coon*, however, the panel reversed itself, concluding that the plaintiff was not entitled to underinsured motorist benefits under any of the policies.

[6] In the Appellate Court, the plaintiff conceded that his claim was foreclosed under *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 30, and *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 625. The plaintiff argued, however, that those decisions were wrongly decided and, furthermore, that the application of our holdings in those cases to the facts of this case rendered § 38a-336 (e) unconstitutional. The Appellate Court refused to address the first contention because that court is bound by this court's precedent. The Appellate Court also declined to review the plaintiff's constitutional claim, stating that "[e]ven though the equal protection claims presented here were not raised or considered in *Coon* and *Gould*, it is not our function, as an intermediate appellate court, to review whether those decisions render that statute unconstitutional. Whether to overrule a prior Supreme Court decision on grounds not raised in the argument of that case is a matter appropriately reserved for the Supreme Court." *Lash* v. *Aetna Casualty & Surety Co.*, 36 Conn. App. 623, 625, 652 A.2d 526 (1995).

[7] We certified the following questions: (1) "Whether a person killed in a multivictim automobile collision, who recovers only $118,373.50 from the tortfeasor's liability insurance policy, qualifies for underinsured motorist coverage under either his $500,000 underinsured motorist policy or his $200,000 underinsured motorist policy." (2) "Whether a person killed in a multivictim automobile collision, who recovers only $118,373.50 from the tortfeasor's liability insurance policy, should be entitled to recover underinsured motorist coverage based on his aggregated underinsured motorist policies, for which separate premiums were paid, with total available coverage limits of $845,000." (3) "Whether this court's decisions in *American Motorists Ins. Co.* v. *Gould*, 213 Conn. 625 [234 A.2d 1105] (1990), and/or *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30 [594 A.2d 977] (1991), should be

the policies issued by the defendants. The plaintiff's contention is predicated on two separate but interrelated claims: first, a tortfeasor is underinsured within the meaning of § 38a-336 (e) if the limits of the tortfeasor's liability insurance are less than the *total amount* of underinsured motorist coverage available to the claimant; and second, a claimant is eligible for underinsured motorist benefits if the payments *actually received* by the claimant under the tortfeasor's policy are less than the limits of the claimant's underinsured motorist coverage. The plaintiff concedes that his first claim is foreclosed by our holding in *Coon*,[8] and that his second claim is foreclosed by our holding in *Gould*.[9]

abandoned or reconsidered." (4) "Whether the underinsured motorist statute at issue in this case, General Statutes § 38a-336 (d), is unconstitutional as interpreted in *Gould* and *Coon* and applied to the facts of this case." *Lash* v. *Aetna Casualty & Surety Co.*, 233 Conn. 910, 911, 659 A.2d 183 (1995).

[8] In *Coon*, we held that when more than one underinsured motorist policy is available, the determination of whether a claimant may recover under a particular policy is made by comparing the limits of the tortfeasor's policy with the limits of each individual underinsured motorist policy against which the claimant seeks to make a claim. *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 35–37. Thus, for purposes of determining whether a tortfeasor is underinsured within the meaning of § 38a-336 (e), the underinsured motorist limits of the policies available to the claimant may not be aggregated, or "stacked." Accordingly, the plaintiff, under our holding in *Coon*, may not recover underinsured motorist benefits under any of the policies issued by the defendants because the amount of liability coverage provided under the tortfeasor's policy, $500,000, is equal to or greater than the underinsured motorist limits of the defendants' policies.

[9] In *Gould*, we held that in determining whether a vehicle is underinsured within the meaning of § 38a-336 (e), the limits of the tortfeasor's liability policy must be compared with the limits of the claimant's underinsured motorist policy rather than the payments actually received by the claimant under the liability policy. *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 630–34. Under the construction of § 38a-336 that we adopted in *Gould*, therefore, the tortfeasor was not underinsured, even though the plaintiff recovered substantially less than the limits of the tortfeasor's policy, because the applicable underinsured motorist limits of each of the policies issued by the defendants; see footnote 8; was equal to or less than the liability limits of the tortfeasor's policy.

He asserts, however, that both of those decisions were wrongly decided and should be overruled.[10] We disagree.

### A

We address the plaintiff's second claim first because it requires little discussion. In *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 673 A.2d 474 (1996), also released today, we rejected an argument identical to the plaintiff's claim that our holding in *American Motorists Ins. Co.* v. *Gould*, supra, 213 Conn. 625, should be abandoned. For the reasons set forth in *Florestal*, we reaffirm the construction of § 38a-336 (e) that was adopted by this court in *Gould*.

### B

The plaintiff also asserts that we should overrule *Covenant Ins. Co.* v. *Coon*, supra, 220 Conn. 30, in which we concluded that underinsured motorist coverage under separate policies covering the claimant may not be aggregated or "stacked" for purposes of determining whether a vehicle is underinsured within the meaning of § 38a-336 (e). At the outset, we note that principles of stare decisis militate against the plaintiff's claim that we should abandon our holding in *Coon*. "Stare decisis, although not an end in itself, serves the important function of preserving stability and certainty in the law. Accordingly, a court should not overrule its earlier decisions unless the most cogent reasons and inescapable

---

[10] The plaintiff could also prevail, at least partially, if we were to overrule either *Gould* or *Coon*, but not both. If we overruled only *Coon*, the aggregated underinsured motorist coverage limits of the applicable policies, $845,000, would exceed the liability policy limit of $500,000, thereby triggering underinsured motorist coverage. Similarly, if we overruled only *Gould*, the total payments received by the plaintiff under the tortfeasor's liability policy, $118,373.50, would be less than the underinsured motorist coverage provided under the policies issued by Aetna Casualty and Surety Company ($500,000) and Allstate Insurance Company ($200,000), thereby triggering underinsured motorist coverage under those two policies only.

logic require it. . . . This is especially true when the precedent involved concerns the interpretation or construction of a statute." (Internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.,* supra, 236 Conn. 305.

In *Coon,* the tortfeasor was insured under a liability policy that provided coverage of $25,000 per person and $50,000 per accident. The claimant was insured under two separate uninsured motorist policies, one that provided $20,000 of underinsured motorist coverage and another with underinsured motorist limits of $50,000. In concluding that § 38a-336 (e) unambiguously prohibited the aggregation of the underinsured motorist limits of the two policies in determining whether the tortfeasor's vehicle was underinsured, we explained that "[t]he application of § 38a-336 requires two distinct steps: (1) determining whether a vehicle is in fact underinsured, so that coverage is available; and (2) calculating the amount of the actual award due the victim." *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 36. As to the first step, we concluded that while § 38a-336 "does not prohibit stacking of coverage in determining the total amount of the award due the victim . . . [t]he statute is unequivocal, however, in establishing the mechanism for determining whether a vehicle is underinsured, and it specifically limits consideration of underinsured motorist coverage to each policy separately." Id., 37. Thus, "the analysis directed by § 38a-336 requires a comparison between the aggregate of liability limits available to the victim against the underinsured motorist limits in *each single policy* against which the victim has a claim."[11] (Emphasis added.) Id., 36.

[11] We also concluded in *Coon* that in determining whether a tortfeasor is underinsured, the per person limit of the tortfeasor's liability policy, and not the policy's per accident limit, is to be compared with the limits of the claimant's underinsured motorist coverage. *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 33–34.

The plaintiff claims, contrary to our conclusion in *Coon*, that § 38a-336 (e) is not clear on its face and, therefore, that our reliance on the statutory language was misplaced. The plaintiff further asserts that our construction of § 38a-336 (e) does not accurately reflect the intent of the legislature because it leads to results that are incompatible with the purpose underlying the enactment of our uninsured and underinsured motorist statutes. We are not persuaded by the plaintiff's arguments.

As in every case involving the construction of a statute, we begin our analysis with a review of the pertinent statutory language. The plaintiff's assertion to the contrary notwithstanding, there is nothing ambiguous in the language of § 38a-336 (e): the word "policies" refers to the insurance carried by the tortfeasor and the word "policy" refers to the underinsured motorist coverage available to the claimant. We cannot assume that the legislature, in enacting a statutory provision that uses a particular word in the plural and then the same word in the singular, intended for two different words to have the same meaning, especially when, as here, the two different terms are used in the same sentence and refer to two different things. We must presume, rather, that the legislature's use of the singular in referring to the "uninsured motorist portion of the *policy* against which claim is made" and its use of the plural in referring to "the sum of the limits of liability under all bodily injury liability bonds and insurance *policies*" was deliberate and purposeful. (Emphasis added.) General Statutes § 38a-336 (e). We see no basis, therefore, to conclude that § 38a-336 (e) is not clear on its face.

The plaintiff contends that even if § 38a-336 (e) is unambiguous, we must resort to other aids to ascertain the intent of the legislature because a literal interpretation of that subsection leads to unfair and arbitrary results. See, e.g., *State* v. *Cain*, 223 Conn. 731, 744, 613

A.2d 804 (1992) ("even if a statute is clear on its face, if a literal interpretation of that statute would lead to unworkable results, resort to other aids to determine legislative intent is appropriate"). The plaintiff offers several hypothetical fact patterns to support his argument that our holding in *Coon* leads to unjust results. For example, he posits a case in which two insureds, A and B, sustain injuries in an automobile accident that is caused by a tortfeasor with $150,000 of liability insurance. Both A and B have underinsured motorist coverage totaling $200,000, but A is covered under a single policy with underinsured motorist limits of $200,000 and B is covered under two policies with underinsured motorist limits of $100,000 each. Under *Coon*, A is eligible for underinsured motorist benefits because the limits of his underinsured motorist policy are greater than the limits of the tortfeasor's liability policy. By contrast, B is not eligible to recover underinsured motorist benefits because the limits of the tortfeasor's liability policy are greater than the limits of each of the underinsured motorist policies under which B is covered. The plaintiff claims that since both A and B have the same amount of underinsured motorist coverage available to them, this result is unfair and, therefore, our interpretation of § 38a-336 (e) must be contrary to the intent of the legislature. We are not persuaded that our holding in *Coon* is inconsistent with the legislative intent underlying the enactment of § 38a-336.

The plaintiff asserts that the pertinent "legislative history . . . clearly demonstrates that the uninsured and underinsured motorist statutes were intended to ensure that victims of automobile accidents receive full financial redress for their injuries." The plaintiff's claim overstates the objective of the legislature in providing for underinsured motorist coverage. Contrary to the assertion of the plaintiff, "the purpose of underinsured motorist coverage is neither to guarantee full compen-

sation for a claimant's injuries nor to ensure that the claimant will be eligible to receive the maximum payment available under any applicable policy." *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 310. It is, rather, "to give a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the underinsured motorist had maintained *an adequate policy of liability insurance. Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 499, 610 A.2d 1212 (1992); *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982)." (Emphasis added.) *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 573, 624 A.2d 892 (1993). Section 38a-336 furthers this legitimate public policy even though certain inequities may arise in some underinsured motorist cases and some accident victims with underinsured motorist coverage will be denied satisfactory compensation for their injuries. See *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 310–11. Thus, any anomalous situation created by our construction of § 38a-336 (e) must be remedied by "legislative consideration and action rather than . . . by judicial fiat." *Simonette* v. *Great American Ins. Co.*, 165 Conn. 466, 473, 338 A.2d 453 (1973).

Indeed, the legislature has responded to our decision in *Coon* in a manner that strongly supports the conclusion that *Coon* was correctly decided. In 1993, the legislature enacted the Automobile Insurance Reform Act; Public Acts 1993, No. 93-297 (P.A. 93-297); which, among other things, eliminated stacking of underinsured motorist coverage for all purposes.[12] See General

---

[12] Stacking is a judicially adopted doctrine, never expressly mandated by our legislature. See, e.g., *Kent* v. *Middlesex Mutual Assurance Co.*, 226 Conn. 427, 431–32, 438 n.14, 627 A.2d 1319 (1993). Thus, although Connecticut has had a long history of stacking; see J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 5.1, p. 180; the aggregation of uninsured and underinsured motorist coverage, while not prohibited by the legislature prior to the enactment of P.A. 93-297, has never been explicitly approved by the legislature.

Statutes § 38a-336 (d).[13] Although P.A. 93-297 is not applicable to this case,[14] it is apparent that the legislature, in considering the very issue that we addressed in *Coon*, validated, rather than overruled, our construction of § 38a-336 (e). For us to renounce our holding in *Coon* after the legislature has signalled its approval of the construction of § 38a-336 (e) that we adopted therein would be contrary to the fundamental objective of statutory construction, namely, "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 92, 646 A.2d 1308 (1994).

In light of the clearly expressed intent of the legislature, "we are constrained to adhere to our holding in [*Coon*] despite the unfortunate fact that, under [*Coon*], some accident victims with underinsured motorist coverage will be denied satisfactory compensation for their injuries." *Florestal* v. *Government Employees Ins. Co.*,

[13] General Statutes § 38a-336 (d) provides: "Regardless of the number of policies issued, vehicles or premiums shown on a policy, premiums paid, persons covered, vehicles involved in an accident, or claims made, in no event shall the limit of liability for uninsured and underinsured motorist coverage applicable to two or more vehicles covered under the same or separate policies be added together to determine the limit of liability for such coverage available to an injured person or persons for any one accident. If a person insured for uninsured and underinsured motorist coverage is an occupant of a nonowned vehicle covered by a policy also providing uninsured and underinsured motorist coverage, the coverage of the occupied vehicle shall be primary and any coverage for which such person is a named insured shall be secondary. All other applicable policies shall be excess. The total amount of uninsured and underinsured motorist coverage recoverable is limited to the highest amount recoverable under the primary policy, the secondary policy or any one of the excess policies. The amount paid under the excess policies shall be apportioned in accordance with the proportion that the limits of each excess policy bear to the total limits of the excess policies. If any person insured for uninsured and underinsured motorist coverage is an occupant of an owned vehicle, the uninsured and underinsured motorist coverage afforded by the policy covering the vehicle occupied at the time of the accident shall be the only uninsured and underinsured motorist coverage available."

[14] Public Act 93-297 took effect on January 1, 1994.

supra, 236 Conn. 310–11. Accordingly, the plaintiff's claim must fail.[15]

## II

The plaintiff also claims that § 38a-336 (e), as construed in *American Motorists Ins. Co.* v. *Gould,* supra, 213 Conn. 625, and *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 30, and as applied to the facts of this case, violates the equal protection clauses of the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution.[16] In *Florestal*

---

[15] "The [plaintiff] correctly assert[s] that under our construction of § 38a-336, [he] would have been able to obtain a greater recovery had the tortfeasor been uninsured. [He] further maintain[s] that this result is inconsistent with the legislature's principal reason for amending our uninsured motorist statutes in 1979; Public Acts 1979, No. 79-235; to include underinsured motorist coverage, namely, 'to remedy the "anomalous situation" . . . where an injured party could find himself in a better position if the tortfeasor had no liability insurance than if he had only the statutory minimum amount.' *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 390–91, 446 A.2d 1059 (1982), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 594 A.2d 977 (1991). As we have indicated, however, we may not presume that the legislature sought to address every possible anomalous situation that may arise under the statutory scheme governing uninsured and underinsured motorist coverage. Moreover, we must construe § 38a-336 (e) 'without reference to whether [we think that provision] would have been or could be improved by the inclusion of other provisions.' *Battersby* v. *Battersby,* 218 Conn. 467, 471, 590 A.2d 427 (1991); see also *Simonette* v. *Great American Ins. Co.,* [supra, 165 Conn. 466]. Accordingly, our duty is not to second guess the wisdom of a clear expression of legislative will but, rather, to ascertain and give effect to the intent of the legislature. See *Gonsalves* v. *West Haven,* 232 Conn. 17, 26, 653 A.2d 156 (1995). In light of the plain language of § 38a-336 (e) and the legislature's apparent validation of our interpretation of that statutory subsection as reflected in its enactment of [§ 38a-336 (d)], we reject the plaintiff['s] argument that *Gould* must be overruled in order to avoid an anomalous result in this case." *Florestal* v. *Government Employees Ins. Co.,* supra, 236 Conn. 308–309 n.5.

[16] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

v. *Government Employees Ins. Co.*, supra, 236 Conn. 313–16, we have today considered, and rejected, a constitutional challenge identical in all material respects to the equal protection claim raised by the plaintiff. We reject the plaintiff's claim for the same reasons that we enumerated in *Florestal*.

The judgment is affirmed.

In this opinion BORDEN, KATZ and LANDAU, Js., concurred.

BERDON, J., concurring. I join the opinion of the court subject to my comments in *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 316–17, 673 A.2d 474 (1996).

Article first, § 20, of the Connecticut constitution, as amended, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

Because the plaintiff does not contend that he is entitled to any greater protection under the state constitution than he is under the federal constitution, we treat those provisions as embodying the same level of protection.