[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This opinion resolves the issue of collateral source reduction in the above-captioned case. CT Page 2206
The defendant moves under General Statutes § 52-225a (a), for a reduction in the economic damages awarded to the plaintiff by a jury verdict rendered on September 19, 2001 because of collateral source Payments. On December 17, 2001, the court held an evidentiary hearing on this issue. The economic damages awarded to the plaintiff by the jury were $2,575.
Health insurance paid $52.38 to the treating physician and $129.48 to the physical therapy group. Medicare paid $470.85 to the physician and $498.49 to the physical therapy group. Total medicare payments were $969.34, of which $646.55 was subrogated. The balance of $322.79 was a collateral source pursuant to General Statutes § 52-225a. Thus, total collateral source payments from the health insurance provider and Medicare were $504.65. The total premiums paid by the plaintiff to secure her insurance coverage for the pertinent treatment period was $1,692 calculated at $141 per month for a period of twelve months, which represents the time period for which coverage was needed.
The defendant argues that the sum of $403.60 which was "written-off" of the physician's bill and $947.07 which was "written-off" of the physical therapist's bill should also be considered as collateral source payments to be added to the previous collateral source figure of $504.65. This court disagrees.
General Statutes § 52-225b defines collateral sources as "any payments made to the claimant, or on his behalf, by or pursuant to: (1) any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits. . . , . (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services.
The court, must approach the questions raised regarding the interpretation of statutes according to the well-established principles of statutory construction designed to further the fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. State v. Kozlowski, 199 Conn. 667, 673, 509 A.2d 20 (1986). The court must look to the words of the statute; to the legislative history; the circumstances surrounding its enactment; to the legislative policy it was designed to implement; and to its relationship to existing legislation and any common law principles governing the same subject matter. Dart Bogue Co. v. Slosberg, 202 Conn. 566, 572, 522 A.2d 763
(1987); Texaco Refining Marketing Co. v. Commissioner, 202 Conn. 583,589, 522 A.2d 771 (1987); State v. Jason B., 248 Conn. 543, 729 A.2d 760
CT Page 2207 (1999).
With any issue of statutory interpretation, our initial guide is the language of the statute itself Frillici v. Westport, 231 Con. 418, 430-432, 650 A.2d 557 (1994). If its language in drafting and enacting a statute is clear and unambiguous, there is no room for alteration of the legislative decision by the judicial branch. . . . Ambriose v. WilliamRaveis Real Estate, Inc., 226 Conn. 757, 764-765 (1993). It is assumed that the words themselves express the intent of the legislature. Mazurv. Blum, 184 Conn. 116, 118-119, 441 A.2d 65 (1981). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." State v. Perruccio, 192 Conn. 154, 163 n. 4,471 A.2d 632 CT Page 7581 (1984).
"A corollary of the above rule of construction is that the intent of the legislature is to be found not in what the legislature meant to say, but in the meaning of what it did say." Burnham v. Administrator,184 Conn. 317, 325, 439 A.2d 1008 (1981). The words used in statutes "shall be construed according to the commonly approved usage of the language." Simmonette v. Great American Ins. Co., 165 Conn. 466, 471,338 A.2d 453 (1973); Caulkins v. Petrillo, 200 Conn. 208, 215-216,510 A.2d 1329 (1986).
The legislative has defined in clear unambiguous language those payments that it considers a collateral source. The statute does not define a decision by a medical provider to "write-off" any balance due from the plaintiff as a collateral source payment.
The court therefore finds that the payments for medical and health insurance premiums totaling $1,692 exceed the total collateral source payments in the amount of $504.65. Therefore, the court will not reduce the economic damages awarded the plaintiff in the amount of $2,575.
Judgment may enter for the plaintiff in the amount of $4,575 which represents the jury verdict, awarding the plaintiff $2,575 economic damages and $2,000 non-economic damages.
The Court
 By: ___________________ Arnold, J