[Civ. No. 23588. First Dist., Div. Two. Sept. 18, 1967.]

LUCILLE CALHOUN, Plaintiff and Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant.

Berry, Davis, Lewis & McInerney, Samuel H. Berry and Phillip S. Berry for Defendant and Appellant.

Newman, Marsh & Furtado and Manuel L. Furtado for Plaintiff and Respondent.

AGEE, J.—In this declaratory relief action the defendant-insurer appeals from a judgment in favor of the widow of its named insured, Carl M. Calhoun.[1]

Mr. Calhoun died on April 29, 1963 from injuries received on April 20, 1963 in a collision in New Mexico between an automobile driven by him and one driven by James Bach, also killed in the same accident.

---

[1]The judgment is herewith set forth in full: "Upon filing the Findings of Fact and conclusions of law:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant shall forthwith appoint an arbitrator pursuant to the terms of that certain policy of liability insurance providing uninsured motorist coverage between the parties herein to meet with an arbitrator appointed by plaintiff to appoint a third arbitrator and together to determine whether the death of plaintiff's husband herein was caused by the negligence of one CARL CALHOUN [sic] and not barred by the contributory negligence of the said decedent nor by plaintiff and to determine the extent of the damages suffered by plaintiff as a result of the said wrongful death."

The insurer had issued an automobile liability insurance policy on the Calhoun automobile containing the usual uninsured motorist coverage as provided for by Insurance Code section 11580.2,[2] with liability for the death of one person limited to $10,000. Bach's liability insurance policy was issued by an out-of-state insurer and was limited to $5,000 for the death of one person.

While in Tucumcari, New Mexico, making arrangements with a mortician, Mrs. Calhoun met with the insurer's representative and filled out a form report for him.

After returning home, Mrs. Calhoun consulted with her personal attorney regarding recovery of damages for the death of her husband. The attorney caused an investigation to be made as to whether Bach, who lived in Texas, left any estate.

In July 1963, Mrs. Calhoun called the insurer's representative and informed him of the result of the investigation. She advised him that Bach "only had $5,000 insurance" and that, under its "U" coverage (uninsured automobile coverage), "State Farm had to make the difference." The representative told her he would report the claim and call back.

One week later, the insurer's representative called Mrs. Calhoun and informed her that his company denied coverage on the ground that Bach was not an *uninsured* motorist. She advised him that she "was going to settle for the $5,000 with . . . the party that was responsible for the accident, settle for that $5,000, and I was looking to State Farm for the other five."

The representative advised her "to go after the collateral that these people might have." To this she replied that "they didn't have anything, therefore I was settling it that way." As she later put it, "there wasn't any point in doing anything else. . . ."

In December 1963 Mrs. Calhoun's attorney concluded settlement of the Bach claim for his policy limit of $5.000.

■ On February 21, 1964 the law with respect to whether Bach was an uninsured motorist was clearly stated in *Taylor* v. *Preferred Risk Mut. Ins. Co.*, 225 Cal.App.2d 80 [37 Cal. Rptr. 63]. (Hearing by Supreme Court unanimously denied.)

It was therein held that an "uninsured motor vehicle," under section 11580.2, is one carrying insurance with limits of

---

[2]All section references are to the Insurance Code unless otherwise indicated.

*less* than the financial responsibility requirement of the Vehicle Code. To hold otherwise, as Presiding Justice Draper pointed out, would mean that "the insurer of the injured party would have no liability whatever as surety for the financially irresponsible wrongdoer if the latter carried insurance of $1,000, $500, or even $1.00, rather than the $10,000-20,000 limits contemplated by the act." (In *Taylor,* as here, the uninsured motorist's limits were only $5,000/10,000.)

On March 20, 1964 Mrs. Calhoun's counsel wrote the insurer as follows: "This letter is to make formal demand upon you under the uninsured motorists provision of the above policy for damages for wrongful death Carl Calhoun. . . . Demand is now made upon you for the difference between the said limits of $5,000.00 and the limits of the uninsured automobile coverage of the above described policy. Would you please respond to this letter in an effort to determine whether the insured is legally entitled to recover such damages and if so, the amount thereof."

Not receiving any response by April 20, 1964, the one-year anniversary of the accident, Mrs. Calhoun filed the within declaratory relief action, asking that the court declare "the rights and duties of the respective parties . . . with respect to the said policy. . . ."

Despite the *Taylor* case, the insurer continued to deny coverage. On August 7, 1964, it filed an answer to Mrs. Calhoun's complaint, alleging as "a full and complete defense," the following: "That the motorist whose acts caused the death of CARL CALHOUN was not an uninsured motorist within the meaning of the Insurance Code of the State of California."

The *facts* upon which the insurer based the above defense were at all times known to the insurer. Although it protests good faith in its denial of coverage, this is somewhat open to question, particularly when the *Taylor* case was by that time over five months old and the Supreme Court had unanimously denied a hearing.

In any event, the insurer has abandoned this point and now relies for a reversal upon two other points: "First, she [Mrs. Calhoun] settled the wrongful death action without the consent of appellant insurer. Second, she failed to meet the time limitations provided in § 11580.2(h)."

*Acceptance of Bach's Policy Limit*
*As Release of Calhoun's Insurer*

The Calhoun policy, as does the statute (§ 11580.2,

subd. (c), subsec. (3)), provides that the uninsured motorist coverage does not apply if the insured, *without the written consent of the insurer*, either (1) makes any settlement with, or (2) prosecutes to judgment any action against, the one legally liable for the injury to the insured.

Here Mrs. Calhoun failed to obtain the written consent of the insurer to make the Bach settlement. Relying solely upon *Travelers Indem. Co.* v. *Kowalski*, 233 Cal.App.2d 607 [43 Cal.Rptr. 843], the insurer contends in its brief that this failure "deprives the insured of uninsured motorist coverage even though no prejudice by the carrier is shown."

*Kowalski* is readily distinguishable. There the insured "filed suit and prosecuted his action to judgment without the knowledge or consent of appellant [insurer]." The insurer in *Kowalski* had not denied coverage under the policy and did not do so until *after* the above acts of the insured had occurred and been brought to its attention.

The same situation obtained in *Portillo* v. *Farmers Ins. Exchange*, 238 Cal.App.2d 58 [47 Cal.Rptr. 450]. There the plaintiffs obtained a wrongful death judgment of $65,000 against two motorists, one being insured and the other not being insured. Plaintiffs then filed suit against the insurance carrier of the insured motorist and settled it for $23,000 without the knowledge or consent of their own insurer. This left a balance of $42,000 due from the uninsured motorist. Plaintiffs then brought suit to recover under the uninsured motorist provisions of a policy issued to them by the defendant-insurer.

The court followed *Kowalski, supra,* holding that the failure to obtain the defendant-insurer's written consent to the settlement with the insured motorist's insurance carrier had the effect of relieving the defendant from its liability under the uninsured motorist coverage.

It will be noted that in *Portillo,* just as in *Kowalski,* there was no denial of uninsured motorist coverage by the insurer until *after* the breach of the insurance contract by the insured.

In recognition of the difference between the situation before it and the situation with which we are faced, the court in *Portillo* cited with apparent approval a recent out-of-state case[3] which held that "the insurance company was in no posi-

---

[3]*Childs* v. *Allstate Ins. Co.,* 237 S.C. 455 [117 S.E.2d 867].

tion to invoke the provisions of the policy because when an insurance company denies all liability, an action of law is maintainable to recover the amount of damages which the insured would be entitled to recover if the company had performed its part of the contract.'' (See also: *Andeen* v. *County Mutual Ins. Co.* (1966) 70 Ill.App.2d 357 [217 N.E.2d 814].)

In the instant case, the trial court held that the insurer ''erroneously and wrongfully'' breached its contract of insurance when it denied any coverage whatsoever on the claim of its insured. This breach by the insurer occurred five months *prior* to any act or alleged breach by Mrs. Calhoun upon which the insurer could base any such denial of coverage.

During this five-month period, with *full knowledge* that Mrs. Calhoun intended to accept $5,000 in settlement of the Bach claim unless the insurer acknowledged coverage under its policy, the insurer *did nothing*.

The insurer's counsel stated to the court that, prior to the *Taylor* decision of February 21, 1964, the response of the insurer to a demand by Mrs. Calhoun for consent to the Bach settlement would have been: ''You suggest to us that we owe you $5,000, the difference between the five in New Mexico and our ten; now, if you want our written consent we are going to require that you give us a full release, and you can have your settlement, otherwise we want to reserve our right of subrogation.''

While the insurer's counsel cautioned the court, before making the above statement, ''mind you, we are dealing with the state of law before *Taylor* is decided,'' there was no change in the insurer's announced legal position *after Taylor except* that by that time it felt that it had acquired a new defense, based upon the December 1963 settlement of the Bach claim. It may be noted that this event also reduced the insurer's liability risk under its policy from $10,000 to $5,000.

Civil Code section 1440 is applicable to the instant situation. It is therein provided that ''If a party to an obligation [here the insurer] gives notice to another [the insured], *before the latter is in default,* that he will not perform the same upon his part, and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously per-

forming or offering to perform any conditions upon his part in favor of the former party." (Italics added.)

In *Estrada* v. *Indemnity Ins. Co.* (1958) 158 Cal.App.2d 129 [322 P.2d 294], the defendant-insurer had issued a liability policy to a city and its officials. It was informed of a verified claim for damages for personal injuries filed with the city by Estrada against a policeman, named Young. The insurer denied that its policy covered Young. When Young was served with summons and complaint in the action which Estrada later filed, he did not forward the same to the insurance company as required by the policy. A default judgment was obtained by Estrada against the policeman. Estrada then filed suit against the insurer based upon this judgment. It was held that Young was covered under the policy. The insurer set up as a special defense the breach of the policy provision with respect to transmittal of summons and complaint.

In affirming judgment against the insurer, the court said: "An insurer may not thus repudiate a policy, deny all liability thereon, and at the same time be permitted to stand on the failure to comply with a provision inserted in the policy for its benefit." (P. 138.)

### Failure To "Formally" Institute Arbitration Proceedings Within One Year

The act provides in pertinent part that "No cause of action shall accrue to the insured under any policy . . . issued pursuant to this section unless within one year from the date of the accident: (1) [not applicable], or (2) [not applicable], or (3) The insured has formally instituted arbitration proceedings." (§ 11580.2, subd. (h).)

The provisions of the policy confine the arbitrable issues to the minimum required by the statute, (1) whether the insured shall be legally entitled to recover damages from the uninsured motorist, and if so entitled, (2) the amount thereof. (§ 11580.2, subd. (e).)

That Bach was responsible for the accident or that Mrs. Calhoun's damages for the wrongful death of her husband exceeded $10,000 was never really in dispute. As the insurer's counsel stated, on motion for new trial, "There is no denial of that. . . . My feeling would be that a proper judgment in this case, assuming that the findings [as to the nonarbitrable issues] are correct—and of course we. don't make that

assumption—would be a judgment merely for the money [i.e., $10,000 less $5,000].''

The insurer did not at any time agree to arbitrate the issue of ''uninsurance'' and it was not required to do so under the policy or the law.[4] Thus, it was necessary for Mrs. Calhoun to obtain a judicial determination that Bach was an ''uninsured motorist'' within the meaning of the statute before any arbitration could take place. A finding on the issue of ''uninsurance'' was in effect a prerequisite to the right or the duty to arbitrate.

In answer to the court's inquiry at trial as to what Mrs. Calhoun should have done with respect to ''formally'' instituting arbitration proceedings, the insurer's counsel replied that this ''is formally accomplished *by writing a written demand for the appointment of the arbitrator,* by the very language I have just read.''

The language to which counsel referred is contained in the first sentence of the policy's arbitration clause, as follows: ''If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator.''

It is obvious that the making of such a ''written demand'' upon the insurer to select one of the arbitrators would have been an idle act in the instant case until there had been a *judicial* determination as to *coverage.*

The situation is comparable to that in *Estrada* v. *Indemnity Ins. Co., supra,* 158 Cal.App.2d 129, 138, wherein the court pointed out that, the insurance company having denied liability on the sole ground that Young was not covered by the

---

[4]In *Federal Mut. Ins. Co.* v. *Schermerhorn,* 238 Cal.App.2d 900, 902 [48 Cal.Rptr. 325], the insurer did not question the power of the arbitrator to determine this issue. In *Jordan* v. *Pacific Auto Ins. Co.,* 232 Cal.App.2d 127 [42 Cal. Rptr. 556], the insured himself *raised* the issue in the arbitration proceedings and produced evidence as to such issue as a part of his case. As stated by the court, ''plaintiff [insured] sought but failed to prove to the satisfaction of the arbitrator that Mohacsi was not covered.'' It was only then that the insured raised the issue as to the power of the arbitrator to determine the issue. The insurer in both of these cases, in effect, *agreed* to the arbitration of the issue of uninsurance.

**policy,** it "would have been an *idle act* to have forwarded the summons and complaint" to it. (Italics added.)

The insurer places great emphasis upon the following finding of the trial court: "That within one year from the date of said accident plaintiff failed to take any of the following actions prescribed by Section 11580.2 of the Insurance Code of the State of California: a) Bring suit for bodily injury against the uninsured motorist in a court of competent jurisdiction. b) Reach an agreement with defendant as to the amount due under the policy. c) Formally institute arbitration proceedings." (Only (c) is involved herein.)

This finding must be read in context with the following findings and the judgment in favor of Mrs. Calhoun: "That on or about March 20, 1964, plaintiff through her attorney, MANUEL L. FURTADO, sent a demand letter to defendant demanding that the parties arrive at agreement as to the amount of damages to which plaintiff was entitled from defendant. Defendants did not respond to said demand letter until more than one year had elapsed from the date of the automobile collision in question; that within said one year period plaintiff filed this action for declaratory relief."

It is clear that the trial court considered that the demand letter and the filing of suit within the one-year period following the accident, under the particular circumstances of this case, tolled the running of the statute of limitations and sufficiently complied with the purpose, meaning and intent of section 11580.2, subdivision (h), subsection (3). We agree.

As the court stated to counsel at the conclusion of the trial, "I would say that [the letter and complaint] is tantamount to asking the court to arbitrate."

Until there was a *judicial* determination of the nonarbitrable issue of coverage, i.e., "uninsurance," *in favor of Mrs. Calhoun,* there would be no useful purpose in arbitrating those issues which were subject to arbitration. As we have seen, the insurer required that this issue be tried and a finding made thereon by the trial court.

The insurer's attorney stated to the trial court, as he had on several prior occasions: "Well, in my view, whether or not there is a claim within the coverage is not an arbitrable issue. That is something that would have to be decided by declaratory relief." (See also: Code Civ. Proc., § 1281.2.)

The court's decision in favor of Mrs. Calhoun as to this issue of uninsurance disposed of the question of the authority of the arbitrators to act after being selected. The parties should now proceed with the arbitration, as directed by the court.

Judgment affirmed. The purported appeal from the order denying a new trial is dismissed, it not being an appealable order.

Shoemaker, P. J., and Taylor, J., concurred.