[Civ. No. 31692. First Dist., Div. Two. Nov. 6, 1974.]

EDWARD J. TERZIAN, Plaintiff and Appellant, v.
CALIFORNIA CASUALTY INDEMNITY EXCHANGE,
Defendant and Respondent.

## COUNSEL

C. Dan Lange and Roger Bernhardt for Plaintiff and Appellant.

Partridge, O'Connell & Partridge and Gilbert B. Kirwin for Defendant and Respondent.

## OPINION

**TAYLOR, P. J.**—This is an appeal by the insured (Terzian) from an adverse judgment in his action against his insurer (California Casualty) after a court trial of a previously undetermined issue after reversal by this court (Division Four) in *Terzian* v. *California Cas. Indem. Exch.*, 3 Cal.App.3d 90 [83 Cal.Rptr. 255]. The contentions are that: 1) the trial court erred in going beyond the record to determine that the insured's action against the uninsured motorist was based on wilful and malicious injury and, therefore, was not dischargeable in bankruptcy; and 2) in any event, the insurer was precluded from relying on the unconsented judgment exclusion to the uninsured motorist coverage by its own prior breach of the insurance agreement. We have concluded that while there is no merit to the first contention, the second is well taken and the judgment in favor of the insurer must be reversed.

The basic pertinent facts, as set forth in the prior opinion (*Terzian* v. *California Cas. Indemn. Exch.*, 3 Cal.App.3d 90 at p. 94 [83 Cal.Rptr. 255]) and revealed by the record, indicate that in July 1960, the insured was injured in an accident involving an uninsured motorist, Alvarado. The insured took the position that Alvarado was responsible for the accident and on May 9, June 6 and 22, in writing, demanded payment of the full $10,000 policy limit under the uninsured motorist coverage of the policy written by the insurer and arbitration of the amount to be paid. After none of the demands were met, the insured on June 26, 1961, commenced a superior court action against Alvarado for negligence. His attorney reported the status of the Alvarado action to the insured by a letter dated October 5, 1961, and again demanded arbitration pursuant to the policy. After receiving no response, the insured in March 1962 commenced the instant action for breach of contract against the insurer. The insurer's answer acknowledged coverage and alleged, as a special defense, the unconsented judgment exclusion of the policy based on Insurance Code section 11580.2, sub-

division (c)(3)[1] against Alvarado. At the first trial of the special defense, the insurer proved that without its knowledge and consent, on March 8, 1963, the insured had stipulated to a judgment for $10,000 against Alvarado. This judgment permanently enjoined the insured from enforcing it except for such rights as the insured may have as a bankruptcy creditor of Alvarado. The trial court found in favor of the insurer on the special defense.

On the prior appeal, this court judicially noticed the bankruptcy proceedings and noted that the lower court had not taken into account the fact that the insured's claim against Alvarado had been listed as a debt in the bankruptcy proceedings and might have been discharged.

The opinion then pointed out that while reversal was required, the full legal effect of Alvarado's discharge in the bankruptcy proceeding depended on the resolution of certain other questions, including whether the uninsured motorist liability for injury to Terzian was for wilful and malicious injuries to the person or property of another and not dischargeable for that reason, pursuant to 11 United States Code Annotated, section 35, subdivision (a)(2).[2]

The opinion directed at page 98: "The unresolved questions should be decided by a trial court, upon conventional evidence and under the general rule that, although the granting of a discharge in bankruptcy is a function of the bankruptcy court, 'the effect of a discharge is properly for the determination of any court in which it is duly pleaded or otherwise submitted for judgment.' (*Yellow Creek Logging Corp.* v. *Dare* (1963) 216 Cal.App.2d 50, 55 [30 Cal.Rptr. 629].)"

At the subsequent hearing, the court found that at the time and place of the accident, Alvarado was intoxicated, proceeded at an excessive rate of speed for a substantial distance on the wrong side of a public highway, and made no effort to avoid the accident. The court found that these acts

---

[1]The present version of this portion of the statute has not been changed since the initial enactment (Stats. 1959, ch. 817, p. 2836) and reads as follows: "(c) The insurance coverage provided for in this section does not apply:

"(3) To bodily injury of the insured with respect to which the insured or his representative shall, *without the written consent of the insurer,* make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor." (Italics supplied.)

[2]At the time here pertinent, 11 United States Code Annotated, section 35, subdivision (a)(2), provided that a discharge in bankruptcy would not release the bankrupt from provable debts for ". . . willful and malicious injuries to the person or property of another . . . ." The 1970 amendment (Pub. L. No. 91-467, § 6) moved this language to subdivision (a)(8).

were performed wilfully and maliciously, and proximately resulted in the injuries to the insured. Accordingly, the court concluded that the Alvarado bankruptcy discharge did not release him from liability to the insured and that the Alvarado judgment had been obtained without the knowledge or consent[3] of the insurer and, therefore, came within the unconsented judgment exclusion of the uninsured motorist statute and the policy exclusion based thereon. The court then concluded that the insured had breached the conditions of his contract with the insurer and that the insurer had not breached the agreement and was entitled to rely on the unconsented judgment exclusion of the uninsured motorist coverage.

■ The insured first contends that the trial court erred in going beyond the record of his action against Alvarado. He maintains that since his complaint and the judgment were based only on negligence, the consent judgment against Alvarado was discharged and, therefore, did not fall within the unconsented judgment exclusion of the uninsured motorist exclusion. Whether a judgment is cancelled by discharge in bankruptcy depends on the nature and character of the liability for which it was recovered. To make this determination in this situation, a court will go behind the judgment, examine the entire record, and may even resort to extrinsic evidence (*Larsen* v. *Beekmann,* 276 Cal.App.2d 185, 190-191 [80 Cal.Rptr. 654]; cf. *Savage* v. *Van Marle,* 39 Cal.App.3d 241, 245-249 [114 Cal.Rptr. 51]).

As indicated in *Larsen, supra,* page 190, the first step in the examination of the record is a determination of the legal character of the stipulation for judgment. Whether the court can go behind that stipulation depends on whether the legal effect thereof was to make an otherwise nondischargeable debt dischargeable. Since this was clearly the issue here, the trial court properly went beyond the record of the Alvarado judgment. Further, the trial court's action was in accord with the instruction of this court on the prior appeal (at p. 98) to determine the previously unresolved questions "upon relevant proof." The trial court had before it the entire record of the prior action. The additional extrinsic evidence consisted of the testimony of the insured that just prior to the accident, Alvarado was heading north in the inside southbound lane of the Bayshore Freeway. The insured, who was going south at about 60-65 miles per hour, saw Alvarado's headlights at a distance of about half a mile and moved into the middle lane to avoid a head-on collision. Despite the presence of a divider strip sufficiently wide to permit him to pull off the road, Alvarado did nothing to avoid the accident. The trial court also admitted, over the objection of the

---

[3]The record indicates that the insurer was notified of the hearing on the motion for summary judgment in the insured's action against Alvarado.

insured, documentary evidence that Alvarado had pled guilty to felony drunk driving (Veh. Code, § 23101).[4]

Acts such as Alvarado's, done with an utter disregard of the rights and safety of others, constitute "wilful and malicious injury" within the meaning of the Bankruptcy Act *(Wegiel* v. *Hogan* (1953) 28 N.J.Super. 144 [100 A.2d 349]; *Henderson* v. *Freshour* (1956) 199 Tenn. 539 [287 S.W.2d 929]). Accordingly, the trial court properly concluded that Alvarado's liability was not discharged in bankruptcy.

The insured next contends that contrary to the trial court's conclusion, the determination that Alvarado's debt was not discharged in bankruptcy, does not automatically resolve the question presented, but not determined in the prior appeal. ■ The insured argues that we must still determine whether the insurer's refusal to arbitrate or consent to the judgment against Alvarado, constituted a sufficient breach of the insurance agreement to preclude the insurer's reliance on the unconsented judgment exclusion clause of the policy. The insurer maintains that the absence of its breach was determined at the first trial, and is, therefore, not before us. We do not agree. The pertinent portion of the prior opinion of Division Four of this court (3 Cal.App.3d 90) that sets forth the contentions of the parties and the holding of the court, at pages 95-96, was as follows: The insured "relies upon *Calhoun* v. *State Farm Mut. Auto. Ins. Co.* (1967) 254 Cal.App.2d 407 [62 Cal.Rptr. 177]. In that case, an action by an insured under a similar policy, the appellate court held that the insurer could not invoke the exclusionary clause as a defense if it had itself breached the policy in the first instance *(id.,* at pp. 411-413); . . . [the insured] argues that *Calhoun* applies here because . . . [the insurer] initially breached this policy by refusing to arbitrate. . . . [The insurer] contends that *Calhoun* does not control because the carrier there breached the policy by wrongfully denying coverage to the insured, whereas it (defendant here) did not deny coverage in the present case, did not refuse to arbitrate, and in any event had not breached the policy. Therefore, . . . [the insurer] argues, . . . [the insured's] prosecution of the Alvarado action to judgment gives it . . . a complete defense under the exclusionary clause by reason of the rule established in *Travelers Indemn. Co.* v. *Kowalski* (1965) 233 Cal.App.2d 607, 610 [43 Cal.Rptr. 843].

---

[4]In his reply brief, the insured, for the first time, raises the question of the sufficiency of the evidence to sustain the trial court's implied finding that the conviction, pursuant to Vehicle Code section 23101 was reckless driving. The insured relies on *People* v. *Schumacher,* 194 Cal.App.2d 335, 339 [14 Cal.Rptr. 924], which held that reckless driving was not a lesser offense necessarily included in Vehicle Code section 23101. However, since this question was not raised in the opening brief, we need not reach it here (6 Witkin, Cal. Procedure (2d ed.) Appeal, § 442, pp. 4405-4406).

"The trial court, having concluded in . . . [the insurer's] favor on its policy defense, apparently applied the *Kowalski* rule upon the factual premise that . . . [the insurer] had not breached the policy; and we might perceive, in support of the judgment, an implied finding to that effect. (2 Witkin, Cal. Procedure (1954) Trial, § 118, par. (1), p. 1850.)"

After noting the failure of the court to consider the effect of the bankruptcy, the prior opinion then pointed out, at page 97, that *Kowalski* did not compel the conclusion that the insured had brought himself within the unconsented judgment exclusion if the uninsured motorist was judgment-proof by reason of a discharge in bankruptcy. Apparently, in relying on this language, the trial court at the second trial concluded that since the Alvarado judgment was not discharged by the bankruptcy proceedings, the insurer was entitled to rely on the unconsented judgment exclusion.

We agree with the insured that neither the prior appeal nor the court at the second trial faced the question of the effect of the insurer's prior breach of the insurance agreement by its failure to respond to the request for arbitration or consent to the proceedings against Alvarado. This is the precise basis on which we distinguished *Kowalski, supra,* in *Calhoun, supra,* at page 411.

The conclusion reached in the trial court below also ignores the interrelationship in an uninsured motorist policy between the arbitration clause and the unconsented judgment exclusion. As explained in *Bielski* v. *Wolverine Insurance Company* (1967) 379 Mich. 280 [150 N.W.2d 788], the requirements of arbitration and unconsented judgment exclusion are corollary. The exclusion lends greater force to the arbitration requirement. If by its conduct here the insurer waived the arbitration requirement[5] by failing to act on it, the purpose of the exclusion disappears as it no longer stands as a bar to the insured's instant action against the insurer. Thus, the fact that the Alvarado judgment was not discharged in the bankruptcy

---

[5]The policy provided:

"ARBITRATION. *If any person making claim hereunder and the Exchange do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment* which may be owing under this Part, *then, upon written demand of either, the matter* or matters upon which such person and the Exchange do not agree *shall be settled by arbitration in accordance with the rules of the American Arbitration Association,* and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the Exchange each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Part." (Italics supplied.)

proceedings is of no significance if the insurer, by its conduct, breached the agreement.

The undisputed record indicates that in the instant case, the insured did not commence his action against Alvarado until June 26, 1961, after the insurer had failed to respond either to his return of the claim form or his subsequent June 22, 1961, written demand for coverage or arbitration.[6] Specifically, in reply to the insured's initial written May 9, 1961, demand for uninsured motorist coverage, the insurer on May 12 wrote as follows: "In view of your written demand of May 9, 1961 we find it necessary to request that Mr. Terzian complete the enclosed 'Proof of Claim' form and file the same with this office. Upon its receipt we will be in a position to give your demand our careful consideration."

The insured's claim form was signed June 2 and received by the insurer on June 5. The insurer then did nothing. On June 6, the insurer received another letter from the insured demanding arbitration and further stating: "Demand is hereby made for arbitration. Unless we receive some statement of your position, we will deem that you have waived any right for arbitration (if you have not already done so) and will proceed to enforce our client's rights under the uninsured motorist's provisions of your policy." Again the insurer did not reply. On June 22, the insured wrote another letter indicating that from the insurer's silence, he assumed the insurer had waived right to arbitration. The insurer did not reply to this letter[7] and at the first trial admitted that there had been no correspondence or conversation pertaining to arbitration. The insured's attorney reported the status of the Alvarado action to the insurer and again by a letter dated October

---

[6]Insurance Code section 11580.2, subdivision (h) [now, subd. (i)] then required that within one year following the accident, the insured must sue the uninsured motorist, settle with the carrier or institute arbitration proceedings against the carrier.

At the oral argument on this appeal, the insurer for the first time urged that the insured had not met the final requirement of this statute as he had not made his demand for arbitration in the precise form required by the Rules of the American Arbitration Association (AAA), incorporated by reference in the arbitration clause of the policy quoted above. The record indicates that a question and answer on this subject were stricken. The pertinent policy provision quoted in footnote 5 above indicates that in case of a dispute as to the uninsured motorist coverage, the matter is to be submitted to arbitration *on the written demand of either party*. Contrary to the insurer's contention, the policy does not require that the demand be made pursuant to the AAA rules, but only that the arbitration be conducted pursuant thereto.

[7]This precise sequence of events was not set forth in the summary of facts in the prior appeal.

5, 1961, demanded arbitration,[8] and indicated that the insurer's failure to respond would be interpreted as a waiver. When the insurer for the third time did not respond, the insured commenced the instant action against the insurer[9] in March 1962. The insured's judgment against Alvarado was not obtained until March 8, 1963.

We hold that the insured complied with the statute and that, as a matter of law, the insurer's repeated failure to respond was tantamount to a denial of liability under the policy and constituted a breach (*Calhoun* v. *State Farm Mutual Auto. Ins. Co.,* 254 Cal.App.2d 407 [62 Cal.Rptr. 177]). By its silence and inaction, the insurer waived arbitration, and then breached its implied promise not to unreasonably or arbitrarily withhold its written consent for the action against Alvarado (cf. *Andeen* v. *Country Mutual Insurance Company* (1966) 70 Ill.App.2d 357 [217 N.E.2d 814]). Thus, by the time the insured instituted this action, the unconsented judgment exclusion was no longer operative. It follows that the judgment obtained by the insured against Alvarado was no bar to his recovery in this action.

We find pertinent and persuasive here the reasoning of the Nevada Supreme Court involving an identical exclusion in *Allstate Insurance Company* v. *Pietrosh* (1969) 85 Nev. 310 [454 P.2d 106], where the insurer, as here, when notified of the litigation, made no move to intervene, demand arbitration, or consent to sue. After finding the insurer's conduct unreasonable, the court said at page 110: "An insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not. [Citation.] For this reason we do not hesitate to place the burden of affirmative action upon the insurance company. When notified of a claim it should investigate with reasonable dispatch; demand arbitration if that is its desire and settlement can't be reached; consent to suit against the uninsured motorist when notified of its pendency; or seek leave to intervene and present its contentions. Multiple litigation is not desirable. In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy. We hold that the permission to sue endorsement, if in effect at the time of the accident, does not bar recovery

---

[8]The insurer attempts to rely on our recent decision in *Civil Service Employees Ins. Co.* v. *Ricard,* 14 Cal.App.3d 400 [92 Cal.Rptr. 325]. In *Ricard,* however, the insurer affirmatively sought to arbitrate and appeared in the insured's action against the uninsured motorist.

[9]Prior to the answer, in the instant action, which acknowledged uninsured motorist coverage, the insurer's attorney had only the oral assurance of coverage from a claims representative.

in the circumstances of this case." Also in accord are *Andeen* v. *Country Mutual Insurance Company* (1966) 70 Ill.App.2d 357 [217 N.E.2d 814], and *Poray* v. *Royal Globe Ins. Co.* (1966) 90 N.J.Super. 454 [217 A.2d 916]).

The judgment is reversed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied December 6, 1974, and respondent's petition for a hearing by the Supreme Court was denied January 29, 1975.