Elsie M. HAVANICH, Appellant,

v.

SAFECO INSURANCE COMPANY OF AMERICA, Appellee.

No. 768, Docket 76–7554.

United States Court of Appeals, Second Circuit.

Argued April 11, 1977.

Decided June 15, 1977.

A. Reynolds Gordon, Bridgeport, Conn. (Gordon & Hiller, Arthur A. Hiller, Bridgeport, Conn., on the brief), for appellant.

Arnold J. Bai, Bridgeport, Conn. (Bai, Pollock & Dunnigan, Mary E. Sommer, Bridgeport, Conn., on the brief), for appellee.

Before CLARK, Associate Justice,* and ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

On February 19, 1971, 19-year old Carol Ann Havanich was killed in Franklin, Massachusetts in a one car accident while riding as a passenger in a vehicle owned and operated by Joseph DeCesare, a resident of Massachusetts. DeCesare's automobile was covered by a liability policy issued by Fireman's Fund Insurance Company in the face amount of $5,000, which was at that time the minimum allowed under the Massachusetts financial responsibility law. Carol Ann's parents, residents of Connecticut, had a family automobile liability insurance policy issued by Safeco Insurance Company of America (Safeco) which provided standard uninsured motorists coverage in the amount of $20,000 as well as medical payments coverage. The Havanich family retained an attorney who late in February, 1971 telephoned Mr. Brownie Blazak, claims manager in Safeco's Fairfield, Connecticut office and advised him of the accident. Blazak informed Havanich's counsel that since DeCesare's vehicle was insured for the $5,000 Massachusetts minimum requirement, even though this was below the $20,000 Connecticut minimum, the Safeco uninsured motorists coverage did not apply. Havanich's counsel advised Blazak that he intended to collect $5,000 from the driver's insurance carrier and would look to Safeco for $15,000, the difference between the Havanich's policy coverage and the amount received from DeCesare's insurer. Safeco did eventually pay the Havanich family $2,000 for medical payments but has refused payment on the uninsured motorist coverage.

On June 25, 1971, a "friendly suit" was filed in Massachusetts and was settled in consideration of $5,000 paid by the Massachusetts carrier to Elsie Havanich, the executrix of her daughter's estate, who executed a general release to DeCesare on July 1, 1971. On July 16, 1971 plaintiff's counsel wrote to Safeco requesting the $15,000. On August 3, Safeco again denied liability because it refused to consider DeCesare as an uninsured motorist under the policy. However, pursuant to a request by the Insurance Department of Connecticut, Safeco changed its position and informed that department by letter of September 13, 1971 that the accident was within the coverage of the policy.[1] On January 18, 1972 Safeco adopted a new position in a letter to counsel for plaintiff contending that the plaintiff by signing the release without its consent violated the policy provision which made coverage inapplicable where the insured, without the consent of the carrier, settled with a party who may be legally liable for the bodily injury suffered by the insured. Thus the insurer claimed that the Havanich's unapproved settlement relieved the insurer of its policy obligations.

On February 21, 1973 Elsie M. Havanich commenced a diversity action in the United States District Court for the District of Connecticut against Safeco, seeking $15,000 damages plus interest and attorney's fees, an order directing arbitration and a declaratory judgment determining the rights of the parties with regard to the claim for uninsured motorist coverage. Safeco's answer contained five special defenses, several of which became crucial in the ensuing jury trial which began before the Honorable Thomas F. Murphy on September 21, 1976.

When the plaintiff had rested her case on October 1, 1976, Safeco moved for a directed verdict on the ground expressed in its January 18 letter to plaintiff's counsel. Safeco urged that the unconditional release given by plaintiff to DeCesare destroyed its right of subrogation against DeCesare provided for in the uninsured motorist provision. Therefore the provision of that policy excluding coverage when a release was giv-

---

* Tom C. Clark, Associate Justice, United States Supreme Court, Retired, sitting by designation.

1. At oral argument of this appeal Safeco reiterated the position it adopted for the Insurance Department that this accident fell within the coverage provided by the uninsured motorist provision. It has not pleaded lack of coverage as a defense to the action.

en to the alleged tortfeasor by the insured without the written consent of the insurer was applicable. On October 5, Judge Murphy granted the motion [2] in an oral opinion. The court held that, "Such a settlement forecloses the plaintiff and the defendant from any suit each would have against DeCesare and is also in direct violation of the terms of the policy which prohibits settlement without the written consent of the defendant, which was not obtained." Judgment was entered for the defendant and the plaintiff's complaint was dismissed upon the merits. This appeal followed. We reverse and remand.

The issue presented on this appeal is narrow. There is no dispute that the Safeco policy in Coverage G, "Damages for Bodily Injury Caused by Uninsured Automobiles Section", obligated the carrier, "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . including death" arising out of the use of an uninsured automobile. Safeco argues that the Exclusion Section of Coverage G, as we have noted, provided that coverage does not apply to bodily injury to an insured where without the written consent of Safeco any settlement has been made with any person or organization which may be legally liable for such injury.

An unauthorized settlement by an insured with an uninsured motorist normally gives a carrier a defense to an uninsured motorist coverage claim. *Cotton States Mut. Ins. Co. v. Torrance,* 110 Ga.App. 4, 137 S.E.2d 551 (1964), aff'd, 220 Ga. 639, 140 S.E.2d 840 (1965). We do not understand the appellant to controvert this proposition as a general statement of the law. The point stressed on this appeal however is that when Safeco improperly denied coverage initially, it breached the terms of its contract and therefore cannot take advantage of the defense provided by the policy. This is an issue not discussed in Judge Murphy's oral opinion.[3] There is authority in other jurisdictions for the proposition that where the carrier erroneously and wrongfully denies coverage, it cannot subsequently invoke the exclusionary language of the policy which would relieve the insurer of its obligation to make payment when settlement of the action against the tortfeasor was without the written consent of the company. *Calhoun v. State Farm Mut. Automobile Ins. Co.,* 254 Cal.App.2d 407, 62 Cal.Rptr. 177 (1967); *Andeen v. Country Mut. Ins. Co.,* 70 Ill.App.2d 357, 217 N.E.2d 814 (1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967); *Childs v. Allstate Ins. Co.,* 237 S.C. 455, 117 S.E.2d 867 (1961).

*Calhoun* is closest in point here. In that case Calhoun, a California resident, had a California State Farm liability policy with uninsured motorist coverage of $10,000. He was killed out-of-state in a collision with a

---

**2.** The standard for directing a verdict or for entering a judgment n. o. v. is the same. C. Wright, Federal Courts § 94 at 464 (3d ed. 1976). In *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir. 1970) we stated that, "On a motion for judgment n. o. v. [or a directed verdict], the evidence must be viewed in the light most favorable to the party against whom the motion is made and he must be given the benefit of all reasonable inferences which may be drawn in his favor from that evidence." We have done so in this opinion.

**3.** In the colloquy between counsel for plaintiff and the bench on October 1, 1976 counsel for plaintiff raised the issue pointing out that Safeco had wrongfully denied coverage initially and that it would be inequitable to permit it now to insist upon the settlement as a defense. Judge Murphy stated that no such claim was made in the complaint. However, as counsel for the plaintiff pointed out this did not become an issue until the settlement was pleaded as a defense by the carrier. Therefore, since the Federal Rules of Civil Procedure make no provision for the filing of reply pleadings by the plaintiff, counsel's opportunity to attack this defense must necessarily come after the pleading stage. See Fed.R.Civ.P. 7. Moreover, evidence of the original denial of coverage was permitted on trial without objection. Fed.R. Civ.P. 15(b) provides that when issues not raised in the pleadings are tried, they shall be treated as if they had been raised in the pleadings. *Wasik v. Borg,* 423 F.2d 44 (2d Cir. 1970). No argument is made here by Safeco that appellant is precluded from raising the issue.

vehicle which had a $5,000 policy limit with an out-of-state carrier. State Farm refused coverage and Calhoun's widow settled with the out-of-state insurer for $5,000 without the consent of State Farm. State Farm resisted payment on the ground that Calhoun's widow had violated the policy provisions by settling the wrongful death action without the consent of the insurer. The California Court of Appeals rejected the defense holding that an insurer may not wrongfully repudiate the policy, deny all liability thereon, and at the same time be permitted to stand on the failure of the insured to comply with a provision inserted in the policy for the carrier's benefit.

Safeco cites no contrary authority.[4] We have no Connecticut authority directly controlling here and so long as we are burdened with diversity jurisdiction we are compelled to attempt to determine what that state's courts would hold on these facts. In *Missionaries of the Company of Mary, Inc. v. Aetna Cas. and Sur. Co.,* 155 Conn. 104, 230 A.2d 21 (1967) a liability carrier wrongfully refused its obligation to defend the insured who had been sued by a third party. A substantial verdict was obtained against the insured. In an action for damages brought against it by the insured, the carrier defended on the ground that there was no coverage by reason of an exclusion. The Supreme Court of Connecticut held for the insured stating, "The defendant, after breaking the contract by its unqualified refusal to defend, should not thereafter be permitted to seek the protection of that contract in avoidance of its indemnity provisions." 230 A.2d at 26. While this and other Connecticut cases[5] are admittedly factually distinguishable the broad rule announced in *Missionaries* would in our view be applicable here.

Moreover, the rule commends itself as fair and equitable. The Havanich family policy was in force and it undeniably pro-

---

**4.** Safeco relies on *Travelers Indem. Co. v. Kowalski,* 233 Cal.App.2d 607, 43 Cal.Rptr. 843 (1965) and *Portillo v. Farmers Ins. Exch.,* 238 Cal.App.2d 58, 47 Cal.Rptr. 450 (1956). However, as pointed out in *Calhoun, supra,* 62 Cal. Rptr. at 180, in both of these cases there was no denial of uninsured motorist coverage by the insurer until after the breach of the insurance contract by the insured. Here the settlement was prompted by Safeco's initial wrongful denial of coverage and after appellant's counsel had advised Blazak that he intended to collect $5,000 from the out-of-state insurer and would look to Safeco for the remaining $15,000.

In *Calhoun* the court did rely on the Calif.Civ. Code § 1440 which provides that if one party to a contract gives notice that it will not perform, the other party is relieved from its contractual obligation. However, this is merely a restatement of common law contractual principles and therefore does not undermine our reliance on *Calhoun.* Restatement of Contracts § 306 provides:

Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of performance of the condition or promise. He has power to nullify his manifestation of unwillingness or inability by retracting it, so long as the former party, in reliance thereon, has not changed his position.

Comment a. to that section also reflects on the situation before us:

No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition. A promisee in judging whether performance of a condition will not be followed by performance of the promise is justified in taking the other party at his word. Nevertheless, if the condition could not or would not have been performed had there been no repudiation of the promise, the promisor is not precluded from asserting the requirement of the condition. In such a case both parties are free.

In short, plaintiff's obligation to obtain the insurer's written consent of a settlement was excused when the defendant breached the contract by denying coverage. J. Calamari & J. Perillo, Contracts § 177 (1970); 5 S. Williston, Contracts § 676 at 222–23 (3d ed. 1961).

**5.** *Haskell v. Eagle Indem. Co.,* 108 Conn. 652, 144 A. 298 (1929) (insured's failure to comply with policy condition excused by insurer's prior wrongful denial of coverage); *Bernhard v. Rochester German Ins. Co.,* 79 Conn. 388, 65 A. 134 (1906) (reliance on insurance agent's statement that condition need not be complied with excused the insured from complying with policy provision).

vided coverage. Safeco's initial refusal to pay was wrongful and it encouraged the plaintiff to take the $5,000 offered by the out-of-state insurer. Safeco again denied coverage after the release was executed but finally admitted coverage resting its refusal to pay on the release defense which it had in fact caused by its wrongful breach. We consider it inequitable to now permit Safeco to profit by its waffling attitude and the application of common law contract principles recognized by the Connecticut courts prevents this inequity.

We therefore reverse the order below and remand for a new trial.

ROBERT P. ANDERSON, Circuit Judge, (dissenting):

I respectfully dissent. The majority assumes that Safeco's initial denial of coverage under the uninsured motorist provision of the Havanich policy in 1971 was wrong and that Safeco's later change of position before the Insurance Department of the State of Connecticut is an admission of liability. I am persuaded, however, that Safeco properly denied coverage at the outset because DeCesare, the Massachusetts tort-feasor here in question, was not in fact an uninsured motorist at the time of the accident.

Mr. Justice MacDonald's excellent and persuasive opinion in *Simonette v. Great American Insurance Co.,* 165 Conn. 466, 338 A.2d 453 (1973), makes it abundantly clear that, had the Connecticut courts passed on the primary issue here of Safeco's initial denial of coverage, the Havanich claim would not have been sustained. In *Simonette,* an automobile, operated by one Good, collided with a telephone pole, killing Good's two passengers, Simonette, Jr., and Carroll. Good was insured in the minimum amount required under the Connecticut statute, i. e., $20,000 for each person and $20,000 for each accident. Good's insurer paid $10,000 to Simonette's estate and the remaining $10,000 to Carroll's estate.

Damages for the wrongful death of Simonette, Jr., however, exceeded the sum of

$10,000. The deceased's father had an insurance policy on his own automobile with Great American Insurance under which his son was an insured and which provided for uninsured-motorist coverage in the amount of $20,000 for each person and $20,000 for each occurrence. The estate of Simonette, Jr., therefore, made a claim against Great American for payment of $10,000, the difference between the $20,000 uninsured motorist coverage on Simonette, Sr.'s policy and the $10,000 already paid by Good's insurer. Great American Insurance refused to arbitrate. The plaintiff's contention, as framed by the Connecticut Supreme Court, was that the proper interpretation of Connecticut statutes and regulations dealing with "uninsured motorist" coverage,

> "entitled an injured party who has an uninsured motorist policy and receives a sum less than the amount specified under that policy from an insured tort-feasor to the difference between what he received from the tort-feasor and the amount of his own uninsured motorist policy provision." 165 Conn. at 470, 338 A.2d at 454.

In rejecting this argument, the Connecticut Supreme Court wrote:

> " 'Uninsured' clearly is not the same as 'underinsured' and '[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings.' *Marcolini v. Allstate Ins. Co.,* 160 Conn. 280, 284, 278 A.2d 796, 798 [1971]." 165 Conn. at 472, 338 A.2d at 455.

*Accord, Weingarten v. Allstate Insurance Co.,* 169 Conn. 502, 507–10, 363 A.2d 1055 (1975) (an unidentified, hit-and-run driver is not an "uninsured motorist").

*Simonette* makes plain that Connecticut will not equate "uninsured" with "underinsured" and that the Havanichs, therefore, were not entitled to uninsured motorist benefits on their own policy merely because the tort-feasor in question was only insured for the $5,000 Massachusetts minimum requirement.

At oral argument on this appeal, Safeco took the position that *Simonette* would apply to the present case only if the tort-feasor in question had been insured for Connecticut's minimum coverage of $20,000 rather than the $5,000 Massachusetts minimum coverage. This overly restrictive view of *Simonette's* applicability ignores the Connecticut Supreme Court's admonition that the word "uninsured" be given its common meaning, *see* Ct. G.S.A. § 1–1, and that it is for the State legislature and not the courts to provide a remedy for individuals who find themselves in the Havanichs' position. 165 Conn. at 471–72, 338 A.2d at 455–56.

Moreover, the majority in essence ignores the affect on the present action of the unauthorized settlement and release of the Massachusetts suit brought by the Havanichs against DeCesare. Litigation of that action would have established the amount of damages actually suffered by the plaintiff through this accident. The plaintiff has asked in her present complaint, filed in the United States District Court in Connecticut, for a judgment of $15,000, but no proof of damages was offered at trial and the directed verdict for defendant Safeco should be affirmed. In any event the most that plaintiff is entitled to, even under the majority ruling, is, therefore, an order directing Safeco to proceed with arbitration as required by the insurance policy in question.